UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRENCE YARBROUGH,
a/k/a LAVALE LANSKI,

        Petitioner,[1]

                                CASE NO. 2:10-CV-12149
    v.                            CHIEF JUDGE GERALD E. ROSEN
                                MAGISTRATE JUDGE PAUL J. KOMIVES

KATHERINE BAUMAN,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . 5
    C.    *Procedural Default (Claims VI-VIII & X)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        1.    *Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        2.    *Cause and Prejudice* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        3.    *Fundamental Miscarriage of Justice* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    D.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    E.    *Limitation on Cross-Examination (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    F.    *Double Jeopardy (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    G.    *Failure to Investigate (Claim IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
        1.    *Inadequate Police Investigation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
        2.    *Sufficiency of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
            a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
            b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
    H.    *Sentencing (Claim IX)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
    I.    *Ineffective Assistance of Counsel (Claims I & V)* . . . . . . . . . . . . . . . . . . . . . . . . . . 29
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

---

[1]At trial the prosecution proceeded against petitioner under the name Lavale Lanski. Petitioner filed his habeas application under this name, and it is the name listed on the Michigan Department of Corrections's Offender Tracking Information. At trial, however, petitioner testified that his name is Terrence Yarbrough, and a police officer testified that petitioner's fingerprints came back to Terrence Yarbrough.

        2.      *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
              a. Failure to Object to Habitual Offender Sentencing . . . . . . . . . . . . . . . . . . . . . . . . 31
              b. Failure to Present Alibi Witness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
  J.     *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
        1.      *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
        2.      *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
  K.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
III.    <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*       *       *       *       *

I.    <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.

II.    <u>REPORT</u>:

A.    *Procedural History*

    1.    Petitioner Terrence Yarbrough, also known as Lavale Lanski, is a state prisoner, currently confined at the Alger Correctional Facility in Munising, Michigan.

    2.    On December 1, 2004, petitioner was convicted of armed robbery, MICH. COMP. LAWS § 750.529; and carjacking, MICH. COMP. LAWS § 750.529a, following a jury trial in the Wayne County Circuit Court.  On December 15, 2004, he was sentenced as a fourth habitual offender, MICH. COMP. LAWS § 769.12, to concurrent terms of 15-30 years' imprisonment on each conviction.

    3.    Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

    I.    WAS DEFENDANT DEPRIVED OF HIS AMS V AND XIV RIGHTS OF DUE PROCESS AND HIS AM VI RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO OBJECT TO SENTENCING ON AN HABITUAL CHARGE WITHOUT PROOF OF THE SAME?

    II.    WAS DEFENDANT DEPRIVED OF HIS AMS V AND XIV RIGHTS OF DUE PROCESS WHEN HE WAS SENTENCED ON THE HABITUAL FOURTH CHARGE WITHOUT LEGALLY ADEQUATE PROOF?

2

III.    WAS DEFENDANT DENIED HIS AM VI RIGHT OF CONFRONTATION
        WHEN THE TRIAL COURT LIMITED THE CROSS-EXAMINATION OF
        A PROSECUTION WITNESS?

Petitioner filed a supplemental *pro se* brief raising three additional claims:

I.      DEFENDANT'S CONVICTIONS FOR BOTH ARMED ROBBERY AND
        CARJACKING, WHERE DEFENDANT WAS CHARGED IN EACH
        COUNT WITH TAKING THE COMPLAINANT'S CAR AND NOTHING
        ELSE, VIOLATED THE CONSTITUTIONAL PROTECTION AGAINST
        DOUBLE JEOPARDY.

II.     DEFENDANT-APPELLANT'S CONVICTIONS MUST BE REVERSED
        BECAUSE THE POLICE DEPARTMENT AND THE PROSECUTION
        DENIED HIM HIS STATE AND FEDERAL CONSTITUTIONAL RIGHT
        TO DUE PROCESS AND TO A FAIR TRIAL BY FAILING TO FULLY
        INVESTIGATE THE CHARGES (US CONST, AM V; MICH CONST
        1963, ART 1, § 17), RELEGATING HIS TRIAL TO A CREDIBILITY
        CONTEST WHERE THE EVIDENCE WAS LESS THAN
        OVERWHELMING.

III.    DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL
        AND A FAIR TRIAL BY HIS ATTORNEY'S FAILURE TO ATTEMPT
        TO LOCATE AND PRESENT MR. LANSKI'S ALIBI DEFENSE OR
        PRODUCE ALIBI WITNESSES AT TRIAL.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

*See People v. Lanski*, No. 259863, 2006 WL 2061401 (Mich. Ct. App. July 25, 2006) (per curiam).

4.      Petitioner, proceeding *pro se*, sought leave to appeal these issues[2] to the Michigan

Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard

order.  *See People v. Lanski*, 477 Mich. 948, 723 N.W.2d 878 (2006).

5.      Petitioner subsequently filed a motion for relief from judgment in the trial court

pursuant to MICH. CT. R. 6.500-.508, raising the following claims:

---

[2]Respondent contends that petitioner did not raise in the Michigan Supreme Court the claim
raised as Claim II in counsel's brief on appeal.  It appears, however, that petitioner combined counsel's
Claims I and II into one claim in his application for leave to appeal, and petitioner attached to the
application both counsel's and his own brief from the court of appeals.

I.      INEFFECTIVE ASSISTANCE OF COUNSEL (FAILURE TO IMPEACH
        A WITNESS, FAILURE TO INVESTIGATE A CAB COMPANY,
        FAILURE TO SUPPRESS LAVALE HARVEY'S STATEMENTS,
        FAILURE TO INVESTIGATE INCONSISTENT STATEMENTS).

II.     PROSECUTOR MISCONDUCT (SAID IN OPENING STATEMENT
        THAT DEFENDANT WAS GOING TO TAKE THE STAND AND ADMIT
        POSSESSING A HANDGUN, SUPPORTING PERJURY, IMPROPER
        ELEVATION OF CHARGES).

III.    TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO
        CHALLENGE, IMPEACH AND SUPPRESS IDENTIFICATION.

IV.     THE TRIAL COURT ABUSED ITS DISCRETION BY SENTENCING
        DEFENDANT OUTSIDE THE GUIDELINES RANGE.

In a supplement to his motion, petitioner raised an additional claim, asserting that counsel was ineffective for failing to properly interview and consult with him, resulting in counsel failing to properly present his misidentification defense.  In an undated opinion, the trial court denied petitioner's motion for relief from judgment with respect to his first three claims, concluding that petitioner's claims were without merit and thus he could not establish prejudice resulting from his failure to raise the claims on direct appeal under MICH. CT. R. 6.508(D)(3)(b)(I).  With respect to petitioner's fourth claim, the court granted relief, amending the judgment of sentence to reflect a minimum term of 170 months' imprisonment rather than the 180 month term originally imposed. The court did not address the claim raised in petitioner's supplement to his motion.  The trial court entered an order on September 17, 2008, reflecting this decision.  The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders, based on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. Lanski*, 485 Mich. 1100, 778 N.W.2d 231 (2010); *People v. Lanski*, No. 289563 (Mich. Ct. App. Feb. 26, 2010).

4

6.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on May 28, 2010.  As grounds for the writ of habeas corpus, he raises the five claims that he raised on direct appeal as stated in his application for leave to appeal to the Michigan Supreme Court, as well as the five claims that he raised or attempted to raise in his motion for relief from judgment.

7.      Respondent filed her answer on December 9, 2010.  She contends that petitioner's sixth through eighth and tenth claims (motion for relief from judgment Claims I-III and the supplemental claim) are barred by petitioner's procedural default in the state courts, and that the remaining claims are without merit.

8.      Petitioner filed a reply to respondent's answer on January 24, 2011.

**B.**      *Factual Background Underlying Petitioner's Conviction*

The evidence adduced at trial was accurately summarized in counsel's brief on direct appeal in the Michigan Court of Appeals:

> Arnita Lester stopped at a gas station at 2:30 in the morning, having gone to buy gas and junk food, when she was approached by someone who asked for her car keys.  She had gone inside, come out and then gone inside again, when she had forgotten something.  This person approached her from the rear and she gave him the keys.  She did this because there was something pointed at the back of her head; she could feel cold on the back of her head and she thought it was a gun.  After giving him the keys she turned around and walked back into the station without looking at him although she did see a denim outfit.  From the station she called her son.  Her nephew, Lavale Harvey, had left a pair of red gym shoes in the trunk of her car.
>
> Lavale Harvey had made a purchase inside the gas station and then went straight to his vehicle.  He went into the passenger seat and started the car by using his own keys.  While he was fumbling with the radio, he saw a man carrying what appeared to be a small 9 mm or .38 caliber gun.  He instantly jumped from the car and ran up the street.  He saw that the man was black and about 6 feet tall, who pushed him out of the way and jumped into the car.  He was wearing a brown, dirty coat.  The witness ran to his aunt and they called 911 and then flagged down a cruising cab and went to home.
>
> The next day, figuring that the man was in the neighborhood the witness and a friend went looking for him.  Coming from a party, he looked into a gas station and exclaimed that that looks like the car since he knew the license plate by heart.  A

young lady was sitting in the passenger's seat.  The witness identified defendant in court, although he appeared heavier.  The witness jumped into the driver's seat using the keys that were in the car and his friend snatched the lady out of the car, at which point they saw defendant coming out of the gas station who then took off behind the gas station.  The witness then drove away because he feared a gun.  Down the street they flagged down a police officer and reported the carjacking and that he had retrieved his car.  When asked for identification he produced an old doctor bill from the vehicle.  While the officer was reporting on his radio, defendant walked up and jumped into the driver's seat as if he were about to drive away.  Defendant was hollering that he was getting his daughter's stuff from the car whereupon the officer ordered him to put his hands up.  The witness noticed that defendant was wearing the witness's red shoes.  At the time of the robbery the papers exhibited to the officer had been in the backseat of the vehicle.  The witness couldn't remember whether he took a cab home after the incident or whether his aunt's son picked them up.  At the preliminary examination defendant was wearing the same blue coat seen at the time of the robbery.

Officer Eric Smith took a description of a black male, approximately 25 years old, approximately 6 feet tall, wearing a denim outfit.

Officer Mark Campau arrested defendant who he knew as Terence [sic] Yarbrough and who he identified in court.  He had been on routine patrol when he was flagged down.  He contacted the complainant by cell phone and confirmed the testimony of Lavale Harvey who stated that he identified defendant as he walked down the sidewalk toward them.  Defendant, responding to the identification, stated that that was his twin brother, which the witness knew to be false, because he had locked up the brother three weeks prior.  At that time, the defendant opened the driver side door and got into the front seat.  The officer ordered him out at gunpoint and arrested him, confiscating certain papers from defendant's pocket which were in the name of Lavale Harvey who also identified the shoes defendant was wearing, by the fact that one had an irregular tongue.  Defendant refused to give his name at the time, but was later identified by his fingerprints.  No firearm was recovered.

Def.-Appellant's Br. on Appeal, in *People v. Lanski*, No. 259863 (Mich. Ct. App.), at 1-3 (citations to trial transcript omitted); *see also*, *Lanski*, 2006 WL 2061401, at *4.

C.     *Procedural Default (Claims VI-VIII & X)*

Respondent first contends that petitioner's sixth through eighth and tenth claims are barred by petitioner's procedural default in the state courts, because petitioner failed to raise these claims on direct appeal.  The Court should agree.

1.     *Default*

6

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263. Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default."). Habeas review of a defaulted claim is barred "unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations omitted). Further, the federal habeas statute provides, in relevant part, that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State[.]" 28 U.S.C. § 2254(b)(1)(A). Thus, "[f]ederal habeas relief is available to state prisoners only after they have exhausted their claims in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999). A petitioner has not exhausted his remedies "if he has the right under the law of the State to raise, by any available procedure, the question

7

presented."  28 U.S.C. § 2254(c).  To satisfy the exhaustion requirement, a petitioner "must have 'fairly presented the substance of each of his federal constitutional claims to the state courts.'" *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004) (quoting *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995)).  A petitioner "fairly presents" his claim to the state courts by either (1) relying upon federal cases employing federal constitutional analysis; (2) relying upon state cases employing such an analysis; (3) phrasing the claim in terms of federal constitutional law; or (4) alleging facts within the mainstream of federal constitutional law.  *See Clinkscale*, 375 F.3d at 437 (quoting *Newton v. Million*, 349 F.3d 873, 878 (6th Cir. 2003)).  Further, the petitioner must fairly present the claim at each level of state court review.  *See O'Sullivan*, 526 U.S. at 845-47.

Here, petitioner's tenth claim is procedurally defaulted because it has not been exhausted, and there is no further avenue in the state courts in which petitioner could exhaust the claim.  In *Coleman v. Thompson*, *supra*, the Supreme Court suggested in dicta that where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims."  *Coleman*, 501 U.S. at 735 n.*. Although the *Coleman* footnote was dicta, it has subsequently been applied by both the Supreme Court and the Sixth Circuit.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Hannah v. Conley*, 49 F.3d 1193, 1195-96 (6th Cir. 1995) (per curiam).  Where no further avenues to present a claim exist, the claim is deemed technically exhausted, and the question becomes solely whether the claim is barred by a procedural default.  *See Broom v. Mitchell*, 441 F.3d 392, 399-400 (6th Cir. 2006).  Although petitioner attempted to raise this claim in a supplemental brief in connection with his motion for relief from judgment, as

8

respondent correctly notes the state court docket contains no record of a motion to amend the motion for relief from judgment, nor did the trial court consider the claim in ruling on the motion. Thus, the claim was not properly presented to the state courts. And because he has already filed a motion for relief from judgment challenging his convictions, he may not bring a second motion raising the unexhausted claim. The Michigan Court Rules explicitly provide that "one and only one motion for relief from judgment may be filed with regard to a conviction." MICH. CT. R. 6.502(G)(1).[3] Thus, there is no further state court avenues of relief available for petitioner to pursue his claims. His claims are therefore technically exhausted, but defaulted. Accordingly, review of petitioner's tenth claim is barred unless petitioner is able to meet one of the two exceptions permitting review of procedurally defaulted claims.

Likewise, petitioner's sixth through eighth claims are barred by petitioner's procedural default in the state courts. Petitioner first presented these claims in his motion for relief from judgment. Michigan Court Rule 6.508, governing motions for relief from judgment, provides that the movant "bears the burden of establishing entitlement to relief." MICH. CT. R. 6.508(D). The rule goes on to provide, in three separately numbered paragraphs, procedural situations in which relief will not be granted: (1) where an appeal relating to the conviction is pending; (2) where the claim has already been ruled upon in a prior appeal or postconviction motion; and (3) where the claim could have been raised in a prior appeal or postconviction motion but was not. *See* MICH. CT. R. 6.508(D)(1)-(3). The Michigan Court of Appeals and the Michigan Supreme Court both rejected petitioner's appeal based on his "failure to meet the burden of establishing entitlement to relief under

---

[3]The rule contains an exception for claims based on "a retroactive change in the law" or "new evidence that was not discovered before the first motion." MICH. CT. R. 6.502(G)(2). Petitioner's claims are not based on any new, retroactively applicable law, or on any newly discovered evidence.

MCR 6.508(D)." These form orders constitute unexplained orders which are ambiguous as to whether a procedural bar is being invoked, and thus a federal habeas court must "look through" these orders to the last reasoned state court judgment to determine if the claims are barred. *See Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). Looking through the appellate court orders, it is clear that the trial court denied relief on the basis of the procedural bar in Rule 6.508(D)(3). *See People v. Lanski*, No. 04-004601-FC (Wayne County, Mich., Cir. Ct.) [hereinafter "Trial Ct. op."].[4] The trial court explained that Rule 6.508(D)(3) prohibits relief on a claim which could have been raised on direct appeal but was not, and further set forth the good cause and actual prejudice standard permitting review of such a claim. *See* Trial Ct. op., at 1-2. The trial court then analyzed each of the claims, concluding that petitioner had failed to establish actual prejudice under Rule 6.508(D)(3)(b)(I). *See id*. at 7. Thus the trial court, the last state court to issue a reasoned decision on the matter, clearly invoked the procedural bar of Rule 6.508(D)(3) in denying petitioner's claims, and these claims are barred unless an exception applies.

Petitioner contends that because the trial court did not discuss good cause, and only focused on the merits of the claims to determine that he could not establish prejudice, the trial court ruled on the merits rather than on the basis of his procedural default. This argument is without merit. The procedural bar set forth in the rule is the bar with respect to claims that could have been raised on direct appeal. This bar is established by the opening paragraph of Rule 6.508(D)(3). Subparagraphs (a) and (b) merely establish two prongs of an exception to the procedural bar imposed by the opening proviso of paragraph (D)(3). In invoking Rule 6.508(D)(3), the trial court clearly and

---

[4]Although respondent's Rule 5 filing contains a copy of the trial court's order denying petitioner's motion for relief from judgment, it does not include a copy of the trial court's opinion. That opinion is attached as an exhibit to petitioner's habeas application.

expressly relied on this procedural bar.  The court's further discussion of the merits merely went to whether petitioner could satisfy an exception to that procedural bar.  Thus, the claims are defaulted. *See Hart v. Woods*, No. 2:10-cv-12795, 2012 WL 5199453, at *5 (E.D. Mich. Oct. 22, 2012) (Duggan, J.); *Black v. Birkett*, No. 1:10-CV-11407, 2012 WL 2870830, at *3 (E.D. Mich. July 12, 2012) (Ludington, J.).

    2.    *Cause and Prejudice*

The first exception to the procedural default rule is the cause and prejudice exception.  Under this exception, review of an otherwise barred claim is allowed if petitioner is able to demonstrate cause for, and prejudice attributable to, his default.  *See Coleman*, 501 U.S. at 750; *Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003).  To establish "cause," petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also*, *Coleman*, 501 U.S. at 753. Here, petitioner has not identified, and the state court records do not reveal, any objective factor external to the defense which prevented petitioner or his counsel from raising his claims on direct appeal.

The only arguable basis for cause–which petitioner does not in fact argue–would be appellate counsel's failure to raise these claims on direct appeal.  But while constitutionally ineffective assistance of counsel may constitute cause to excuse a procedural default, *see Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray*, 477 U.S. at 488, appellate counsel's failure to raise petitioner's habeas claims on direct appeal cannot constitute cause here, because petitioner has not exhausted any ineffective assistance of appellate counsel claim.  As the Supreme Court has observed, "in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review

in state court will suffice" to establish cause. *Edwards*, 529 U.S. at 451 (citing *Murray*, 477 U.S. at 488-89). In order to constitute cause, however, counsel's performance must amount to ineffective assistance of counsel under the Sixth Amendment. *See id.* "In other words, ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim." *Id.* For this reason, the ineffective assistance claim which is asserted as cause must itself be both exhausted, *see id.* at 451-52 (discussing *Murray*, 477 U.S. at 489), and not procedurally defaulted, *see id.* at 452-53.

Here, petitioner has never presented, in any fashion, a claim that his appellate counsel was ineffective for failing to raise these claims on direct appeal. Petitioner's motion for relief from judgment in the trial court did not so much as mention any ineffectiveness by appellate counsel, nor did his appellate briefs in the Michigan Court of Appeals and Michigan Supreme Court. An ineffective assistance of appellate counsel claim, therefore, has not been exhausted, and cannot be used as a basis to establish cause to overcome his procedural default. *See Lott v. Coyle*, 261 F.3d 594, 608-09 (6th Cir. 2001). Because petitioner must establish both cause and prejudice, his failure to establish cause makes it unnecessary to consider the prejudice issue. *See Hargrave-Thomas v. Yukins*, 374 F.3d 383, 389 (6th Cir. 2004); *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004).

3.   *Fundamental Miscarriage of Justice*

Under a second exception, known as the "fundamental miscarriage of justice" exception, petitioner can still have his procedurally barred claims reviewed if he can show that the constitutional errors he alleges "'ha[ve] probably resulted in the conviction of one who is actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Murray*, 477 U.S. at 496); *accord Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986). "[T]o establish actual innocence, petitioner

must demonstrate that, 'in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Bousley*, 523 U.S. at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995) (internal quotation omitted)); *accord Kuhlmann*, 477 U.S. at 455 n. 17 (citation omitted).

Although petitioner contends in his reply that a fundamental miscarriage of justice will occur if the merits of his claims are not reviewed, petitioner does not present any new reliable evidence that he is factually innocent of the charges against him. *See Schlup v. Delo*, 513 U.S. 298, 316 (1995) ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."). Thus, he has failed to establish that application of the procedural bar will result in a miscarriage of justice.

D.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

13

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its

14

decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.      *Limitation on Cross-Examination (Claim II)*

In his second claim, petitioner contends that he was denied his right to confront a witness against him by the trial court's limitation on cross-examination.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

The Supreme Court's "Confrontation Clause cases fall into two broad categories:  cases involving the admission of out-of-court statements and cases involving restrictions imposed by law or by the trial court on the scope of cross-examination."  *Delaware v. Fensterer*, 474 U.S. 15, 18 (1985) (per curiam).  The latter category, which is implicated here, recognizes that "[c]onfrontation means more than being allowed to confront the witness physically."  *Davis v. Alaska*, 415 U.S. 308,

15

315 (1974). Thus, in cases where the trial court has restricted cross-examination in some manner, "the Court has recognized that Confrontation Clause questions will arise because such restrictions may 'effectively . . . emasculate the right of cross-examination itself.'" *Fensterer*, 474 U.S. at 19 (quoting *Smith v. Illinois*, 390 U.S. 129, 131 (1968)).

However, the Supreme Court has also explained that the Confrontation Clause does not "guarantee cross-examination that is effective in whatever way and to whatever extent the defense might wish." *Fensterer*, 474 U.S. at 20. The question is whether the trial court's ruling allowed for "substantial compliance with the purposes behind the confrontation requirement," or, put another way, whether petitioner was "significantly limited in any way in the scope or nature of his cross-examination." *Green*, 399 U.S. at 166. Thus, "[s]o long as cross-examination elicits adequate information to allow a jury to assess a witness's credibility, motives, or possible bias, the Sixth Amendment is not compromised by a limitation on cross-examination." *United States v. Cueto*, 151 F.3d 620, 638 (7th Cir. 1998); *see also*, *United States v. Larranaga*, 787 F.2d 489, 498 (10th Cir. 1986). Further, even if a restriction on cross-examination amounts to a violation of the confrontation right, such an error may be harmless. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

    2.    *Analysis*

At trial, counsel sought to cross-examine Harvey about a prior conviction, as well as about previous lies Harvey told to the police. The following exchange occurred:

Q:      Mr. Harvey, isn't it true that back on March 22nd, 1999, you were convicted of –

THE COURT:    Belay that. Belay that. Forget that. Don't ask that. I'll explain to you later. Just go right into the testimony about what happened.

MS. WALKER:    Okay.

16

Q:       Mr. Harvey, you've lied to the police before; correct?

A:       Yes.

Q:       Did you lie about your car being stolen then, too?

A:       Yes, that's when I was a teenager.  When I – I was scared, because I had my girl –

THE COURT:       You're asking him about some testimony of some statement made to the police, other than this incident?

MS. WALKER:       Yes, your Honor.

THE COURT:       That's irrelevant.  You've got to ask him if he told anything false about this incident.  We're not interested in something that happened years ago; just this incident.
                 I don't believe you're going to find any person that hasn't lied sometime in his life.  It's this incident we're concerned with.

Trial Tr., Vol. I, at 97-98.  After Harvey had completed his testimony and the jury had been excused, the court explained to counsel that, in order to use a witness's criminal record for impeachment, she was required to file a motion so that the court could determine whether the conviction was admissible for impeachment purposes.  *See id.* at 102.

The Michigan Court of Appeals rejected petitioner's claim.  With respect to the conviction issue, the court explained that under Rule 609, a prior conviction is admissible to impeach only if it involves an element of theft, dishonesty, or false statement, and even such a conviction may not be admissible if more than 10 years had elapsed from the date of conviction or the witness's release from confinement.  *See Lanski*, 2006 WL 2061401, at * 2 & n.1 (discussing MICH. R. EVID. 609).  Because petitioner made no offer of proof regarding Harvey's alleged prior conviction at trial, and failed to identify the prior conviction in his appellate brief, the court concluded that petitioner had failed to show that the trial court abused its discretion in limiting cross-examination.  With respect

17

to the prior lies issue, the court of appeals concluded that even if the trial court had erred in excluding this testimony, any error was harmless because "the jury heard Harvey admit that, when he was a teenager, he had lied to the police that his car was stolen, and the jury was not instructed to disregard the testimony.  Furthermore, Harvey's testimony corroborated the testimony of Arnita Lester, the other eyewitness in this case, whose credibility was not impeached."  *Id*. at *3.  The Court should conclude that these determinations were reasonable.

Petitioner's claim fails, for several reasons.  First, in *Davis v. Alaska*, *supra*, the Court held that the Sixth Amendment right to confront witnesses guarantees a criminal defendant the right to cross-examine adverse witnesses to expose bias and motivations for testifying.  *See id*. at 315-16; *see also*, *Delaware v. Van Arsdall*, 475 U.S. 673, 678-80 (1986).  However, the *Davis* Court limited its Confrontation Clause decision to those facts going to a witness's bias or motive in testifying, as opposed to general attacks on credibility.  The Court's decision in *Van Arsdall* was similarly limited.  Indeed, in his concurring opinion in *Davis*, Justice Stewart emphasized that the *Davis* "Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination" concerning past convictions.  *Davis*, 415 U.S. at 321 (Stewart, J., concurring).  Thus, the Sixth Circuit has explained that the cross-examination right protected by the Confrontation Clause is limited to cross-examination directed at eliciting a witness's bias or motive to testify falsely; it does not protect cross-examination designed to elicit substantive evidence or facts going to a witness's general credibility.  *See Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000).  Because the question counsel sought to ask did not go to the witness's bias or motive for testifying, the court's preclusion of the testimony did not violate the Confrontation Clause.

With respect to the prior conviction issue, petitioner's claim further fails because, as the Michigan Court of Appeals noted, petitioner failed to provide any information regarding the conviction upon which the trial court could determine whether the conviction was admissible under Rule 609. Where a defendant fails to make any showing of admissibility under Rule 609, a trial court does not infringe on the defendant's right to confront the witness by precluding cross-examination under Rule 609. *See United States v. Cunningham*, 638 F.2d 696, 699 (4th Cir. 1981).

With respect to the prior lies issue, as the court of appeals concluded, even if there was error in the exclusion of this testimony, it was harmless. Even assuming that a constitutional error occurred with respect to the trial court's limitation on this testimony, petitioner is entitled to habeas relief only if the error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see also*, *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (explaining that *Brecht* harmless error standard applies on habeas review regardless of whether or under what standard the state court conducted harmless error review).[5] Here, any error in the trial court's ruling was harmless. First, the jury heard that Harvey had lied to the police about having his car stolen on a prior occasion, and despite its restriction on further examination the trial court did not strike this testimony or instruct the jury to disregard it. Second, there was no question that petitioner had taken the car. In his own testimony, petitioner admitted that he took the car. *See* Trial Tr., Vol. II, at 4-5. The only question was whether he had taken it from the victims by force or, as he claimed, had simply taken it while it was sitting in the street empty with the engine running. Third, Harvey's

---

[5]Respondent explicitly argues in her answer that the error was harmless. *See* Answer, at 21-22. Thus, this is not a case in which the Court must decide whether to consider the matter *sua sponte*. *See Gover v. Perry*, ___ F.3d ___, ___, 2012 WL 5200193, at *3-*5 (6th Cir. Oct. 23, 2012).

testimony was consistent with the testimony of his aunt, who was subjected to no similar impeachment of her testimony.  In these circumstances, the trial court's restriction on further examination of Harvey's prior lies to the police did not have a "substantial and injurious effect or influence" on the jury's verdict.  *Brecht*, 507 U.S. at 637.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.    *Double Jeopardy (Claim III)*

In his third claim, petitioner argues that his conviction for both armed robbery and carjacking, arising from a single larcenous event, violates the Double Jeopardy Clause.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.    *Clearly Established Law*

The Fifth Amendment to the United States Constitution commands that no "person be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. CONST. amend. V.  The Double Jeopardy Clause, which is applicable to the states through the Due Process Clause of the Fourteenth Amendment, *see Benton v. Maryland*, 395 U.S. 784, 794 (1969), provides three basic protections: "[It] protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense."  *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted).  "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense."  *Shiro v. Farley*, 510 U.S. 222, 229 (1994) (citing *United States v. Wilson*, 420 U.S. 332, 339 (1975)).

However, in the context of multiple punishments, the Double Jeopardy Clause does not prohibit a state from defining one act of conduct to constitute two separate criminal offenses.  As

20

the Supreme Court has explained, "[b]ecause the substantive power to prescribe crimes and determine punishments is vested with the legislature . . ., the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984).  Thus, "even if the two statutes proscribe the same conduct, the Double Jeopardy Clause does not prevent the imposition of cumulative punishments if the state legislature clearly intends to impose them." *Brimmage v. Sumner*, 793 F.2d 1014, 1015 (9th Cir. 1986).  As the Supreme Court explained, when "a legislature specifically authorizes cumulative punishments under two statutes, . . . a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983).  In determining whether the Michigan legislature intended to authorize separate, cumulative punishments in the circumstances present here, the Court "must accept the state court's interpretation of the legislative intent for the imposition of multiple punishments[.]" *Brimmage*, 793 F.2d at 1015; *see also*, *Hunter*, 459 U.S. at 368.  Thus, the question is whether the Michigan Legislature intended that a single assault meeting the elements of both the armed robbery and carjacking statutes give rise to separate criminal liability; if so, the "court's inquiry is at an end" and there is no double jeopardy violation.  *Id*. at 499 n.8.  In making this determination, the Court is bound by the Michigan courts' interpretation of state law.  *See Rodgers v. Bock*, 49 Fed. Appx. 596, 597 (6th Cir. 2002); *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).

2.    *Analysis*

Here, the Michigan Court of Appeals rejected petitioner's claim, concluding that the Michigan Legislature intended to authorize separate criminal penalties in the circumstances of

21

petitioner's case.  Relying on its prior decision in *People v. Parker*, 230 Mich. App. 337, 584

N.W.2d 336 (1998), the court explained:

> The focus of the carjacking statute is on the particular type of property taken, while
> the focus of the armed robbery statute is on the person assaulted and robbed.  The
> Legislature intended the statutes to reach different types of harm, and it "specifically
> authorized two separate convictions arising out of the same transaction."  Because
> carjacking and armed robbery do not constitute the same offense, we reject
> defendant's double jeopardy argument.

*Lanski*, 2006 WL 2061401, at *3 (citations omitted) (quoting *Parker*, 230 Mich. App. at 343-44, 584

N.W.2d at 339).  Because this Court is bound by the Michigan courts' interpretation of state law in

deciding the double jeopardy issue, *see Rodgers*, 49 Fed. Appx. at 597; *Banner*, 886 F.2d at 780, the

"court's inquiry is at an end," *Johnson*, 467 U.S. at 499 n.8, and there is no double jeopardy

violation.  *See Grayer v. McKee*, 149 Fed. Appx. 435, 442 (6th Cir. 2005); *Lumpkin v. Romanowski*,

No. 5:08-CV-10304, 2010 WL 1222691, at *6 (E.D. Mich. Mar. 25, 2010) (O'Meara, J.).

Nor can petitioner show that his conviction violates the Double Jeopardy Clause under the

*Blockburger* "same elements" test.  As the Supreme Court has explained:

> In both the multiple punishment and multiple prosecution contexts, this Court
> has concluded that where the two offenses for which the defendant is punished or
> tried cannot survive the "same-elements" test, the double jeopardy bar applies.  The
> same-elements test, sometimes referred to as the "*Blockburger*" test, inquires
> whether each offense contains an element not contained in the other; if not, they are
> the "same offense" and double jeopardy bars additional punishment and successive
> prosecution.

*United States v. Dixon*, 509 U.S. 688, 696 (1993) (citations omitted); *see also*, *Blockburger v. United*

*States*, 284 U.S. 299, 304 (1932)).  Petitioner was convicted of armed robbery and carjacking.  The

elements of armed robbery are:  (1) an assault, (2) a felonious taking of property from the victim's

presence or person, (3) while the defendant is armed with a weapon described in the statute.  *See*

*Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004) (Gadola, J.), *aff'd*, 173 Fed. Appx.

22

437 (6th Cir. 2006); *People v. Smith*, 478 Mich. 292, 319, 733 N.W.2d 351, 365 (2007). The elements of carjacking are: "(1) that the defendant took a motor vehicle from another person, (2) that the defendant did so in the presence of that person, a passenger, or any other person in lawful possession of the motor vehicle, and (3) that the defendant did so either by force or violence, by threat of force or violence, or by putting the other person in fear." *People v. Davenport*, 230 Mich. App 577, 579, 583 N.W.2d 919, 921 (1998). The armed robbery statute requires both intent to permanently deprive the victim of the property taken and the use of weapon, while the carjacking statute requires neither of these elements. *See Parker*, 230 Mich. App. at 344, 584 N.W.2d at 340. Likewise, the carjacking statute requires the taking of an automobile in the presence of another person, while the armed robbery statute is not specific to any type of property. Thus, the armed robbery statute requires elements which are not required by the carjacking statute, and carjacking statute requires elements which are not required by the armed robbery statute. They thus do not constitute the "same offense" for double jeopardy purposes under the *Blockburger* test. *See Grayer*, 149 Fed. Appx. at 442-43; *People v. McGee*, 280 Mich. App. 680, 684-85, 761 N.W.2d 743, 746-47 (2008). Thus, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.      *Failure to Investigate (Claim IV)*

In his fourth claim, petitioner contends that he was denied his right to due process of law because the police failed to fully investigate the case, leaving the trial a credibility contest at which the evidence was less than overwhelming. The Michigan Court of Appeals treated this claim as a sufficiency of the evidence claim, and rejected it. Regardless of whether treated as an independent due process claim or as a sufficiency of the evidence claim, the Court should conclude that petitioner is not entitled to habeas relief.

23

1.     *Inadequate Police Investigation*

To the extent petitioner is asserting an independent due process right to an adequate police investigation that was violated by the police in his case, the claim is without merit. The Due Process Clause requires the state to disclose exculpatory evidence in its possession to the defense. *See Brady v. Maryland*, 373 U.S. 83 (1963). However, it is well established, that "*Brady* . . . does not require the government to create exculpatory material that does not exist." *United States v. Sukumolachan*, 610 F.2d 685, 687 (9th Cir. 1980); *see also*, *Richards v. Solem*, 693 F.2d 760,766 (8th Cir. 1982) ("Although the state has a duty to disclose evidence, it does not have a duty to create evidence."). Once the police have sufficient evidence to establish probable cause, they may arrest and proceed against a suspect without conducting a further investigation for exculpatory evidence which may have exonerated the suspect. *See United States v. Harness*, 453 F.3d 752, 755 (6th Cir. 2006); *Klein v. Long*, 275 F.3d 544, 551-52 (6th Cir. 2001).

In short, there is simply no law, much less clearly established Supreme Court law, *see* 28 U.S.C. § 2254(d)(1), which provides that criminal defendants have a constitutional right to an adequate police investigation. Thus, petitioner cannot show that the alleged failure of the police to fully investigate his crime deprived him of any constitutional right, and he is therefore not entitled to habeas relief on this claim. *See  Maness v. Runnels*, No. CIV-S-06-0409, 2009 WL 1155670, at *4 (E.D. Cal. Apr. 29, 2009) ("To the extent petitioner believes police officers did not adequately investigate [his crime], petitioner fails to state a claim upon which relief can be granted because he has no constitutional right to a police investigation, adequate or otherwise."); *Thomas v. Warren*, 398 F. Supp. 2d 850, 859 (E.D. Mich. 2005) (Gadola, J.).

2.     *Sufficiency of the Evidence*

24

To the extent petitioner is attempting to raise a sufficiency of the evidence claim, as the Michigan Court of Appeals viewed the claim, the claim is without merit.

### a.   Clearly Established Law

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970).  Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution.  "[I]t is the responsibility of the jury–not the court–to decide what conclusions should be drawn from the evidence admitted at trial."  *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S. Ct. 2, 4 (2011) (per curiam).  The *Jackson* standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319).  Likewise, a reviewing court "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United State v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *see also*, *United States v. Bailey*, 444 U.S. 394, 424-25 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story.").  It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor

25

of the prosecution. *See Jackson*, 443 U.S. at 326. As the Court has explained, "the only question under *Jackson* is whether [the jury's finding] was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065. Under the amended version of § 2254(d)(1) a federal habeas court's review is "twice-deferential." *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (per curiam). A state court's decision that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference under AEDPA." *Coleman*, 132 S. Ct. at 2065; *see also*, *Cavazos*, 132 S. Ct. at 4.

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman*, 132 S. Ct. at 2064 (citation omitted) (quoting *Jackson*, 443 U.S. at 324 n.16).

### b. Analysis

In his claim challenging the adequacy of the police investigation, petitioner asserts that the evidence was far from overwhelming, the case was essentially a credibility contest between him and the victims, there was no physical evidence corroborating the victims' accounts, and there were contradictions and inconsistencies in the victims' testimonies. Treating these arguments as a sufficiency of the evidence claim, the Michigan Court of Appeals found the claim to be without

26

merit.  The court reasoned that the victims' testimony was, if believed by the jury, sufficient to establish the elements of the offenses, and that any questions regarding credibility were for the jury to resolve.  *See Lanski*, 2006 WL 2061401, at *4.  This determination was reasonable.

There is no question that the testimony of the victims was sufficient to establish each element of the offenses charged against petitioner.  Under Michigan law, the elements of armed robbery are (1) an assault, (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute.  *See Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004) (Gadola, J.), *aff'd*, 173 Fed. Appx. 437 (6th Cir. 2006); *People v. Smith*, 478 Mich. 292, 319, 733 N.W.2d 351, 365 (2007). The elements of carjacking are:  "(1) that the defendant took a motor vehicle from another person, (2) that the defendant did so in the presence of that person, a passenger, or any other person in lawful possession of the motor vehicle, and (3) that the defendant did so either by force or violence, by threat of force or violence, or by putting the other person in fear." *People v. Davenport*, 230 Mich. App 577, 579, 583 N.W2.d 919, 921 (1998). Here, Lester testified that petitioner walked up behind her, placed a cold, round object to her head, and demanded the keys to her car.  Harvey testified that petitioner was in fact armed with a handgun. Both testified that petitioner drove the car away after taking the keys from Lester.  This testimony establishes that petitioner assaulted Lester and took her property while armed, and that he took the car in Lester's presence through the threat of force or violence.

It is well established that the testimony of a victim alone, if it establishes all the elements of the offense, is sufficient to support a guilty verdict.  *See O'Hara v. Brigano*, 499 F. 3d 492, 500 (6th Cir. 2007) (victim's testimony alone sufficient even though not corroborated by other witnesses or physical evidence); *United States v. Kenyon*, 397 F.3d 1071, 1076 (8th Cir. 2005) ("Even in the face

27

of inconsistent evidence, a victim's testimony alone can be sufficient to support a guilty verdict."). Further, the evidence is not rendered insufficient because there was no physical evidence tying petitioner to the crime. "Lack of physical evidence does not render the evidence that is presented insufficient." *United States v. Magallanez*, 408 F.3d 672, 681 (10th Cir.2005); *see also*, *O'Hara*, 499 F. 3d at 500 (victim's testimony alone sufficient even though not corroborated by other witnesses or physical evidence); *United States v. Bieghler*, 198 Fed. Appx. 566, 568 (8th Cir. 2006) ("'[F]orensic evidence' is not required for conviction."). Petitioner's argument boils down to a claim that the victims' testimony was not credible. However, as explained above, witness credibility is solely the province of the jury. A reviewing court may reverse a jury's credibility determinations only where the testimony is incredible as a matter of law, "such as where it was physically impossible for the witness to observe that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all." *United States v. Radziszewski*, 474 F.3d 480, 485 (7th Cir. 2007) (internal quotation omitted); *accord United States v. Flores*, 572 F.3d 1254, 1263 (11th Cir. 2009); *United States v. Gadison*, 8 F.3d 186, 190 (5th Cir. 1993). Here, neither Lester's nor Harvey's testimony was impossible based on their ability to observe or the laws of nature. The fact that there may have been inconsistencies between the testimonies of the two victims does not render the testimony incredible on its face. *See United States v. Patterson*, 23 F.3d 1239, 1244 n.5 (7th Cir. 1994).

The *Jackson* standard does not permit "fine-grained factual parsing" of the evidence by a reviewing court, *Coleman*, 132 S. Ct. at 2064, nor does it permit this Court to reweigh the conflicts in the evidence or assess the credibility of the witnesses. The jury was free to draw any reasonable inferences from the evidence, and to resolve the conflicts in the evidence in favor of the prosecution.

28

In light of the victims' testimony, the jury's verdict does not "fall below the threshold of bare rationality." *Id*. at 2065. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.      *Sentencing (Claim IX)*

In his ninth claim, petitioner contends that the trial court improperly sentenced him above the appropriate guideline range. The Court should conclude that petitioner is not entitled to habeas relief on this claim. A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Petitioner's claim that the court improperly scored or departed from the guidelines range raises issues of state law that are not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also, Branan*, 851 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review). Thus, petitioner is not entitled to habeas relief on his claims relating to the trial court's scoring of, or departure from, the Michigan sentencing guidelines.

I.      *Ineffective Assistance of Counsel (Claims I & V)*

Finally, petitioner contends that he was deprived of the effective assistance of counsel at

trial.  Specifically, he contends counsel was ineffective for failing to: (1) object to his sentencing as an habitual offender; and (2) present an alibi witness.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

       1.     *Clearly Established Law*

     The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at 687.  These two components are mixed questions of law and fact.  *Id*. at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id*. at 697.  If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  *Id*.  With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*.  at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).  "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id*. at 690.  With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would

30

have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*., at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

31

2.    *Analysis*

*a.  Failure to Object to Habitual Offender Sentencing*

Petitioner contends that counsel was ineffective for failing to object to his sentencing as a fourth habitual offender.  He argues that because there was no affirmative verification that he had three prior, valid convictions, counsel should have objected.  The Michigan Court of Appeals rejected this claim, explaining that the three prior felonies were listed in the Presentence Information Report (PSIR), which is presumed to be accurate, and that on appeal petitioner "presented no evidence nor does he even claim that he did not commit the crimes listed in the habitual offender notice and the PSIR or that further investigation by defense counsel would have revealed that he did not commit them."  *Lanski*, 2006 WL 2061401, at *1.  In the absence of any such evidence, an objection would have been futile, and counsel was not ineffective for failing to raise a futile objection.  *See id*.  The Court should conclude that this determination was reasonable.

The Michigan Court of Appeals was correct in placing the burden on petitioner to demonstrate a reasonable probability that any of the underlying convictions was inaccurate or invalid.  *See Pierce*, 63 F.3d at 833 (defendant bears the burden of demonstrating counsel's ineffectiveness).  The court of appeals was also correct in noting that counsel cannot be deemed ineffective for failing to raise a meritless objection.  *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993).  As the court of appeals explained, petitioner failed to offer any evidence that the prior felonies listed in the PSIR were inaccurate or invalid; indeed, he did not even argue that this was the case, arguing instead only that the accuracy of the convictions had not been verified.  Petitioner's claim here suffers from the same flaw.  Because there is no argument, much

32

less evidence, that any of the convictions relied upon by the trial court were in fact inaccurate or invalid, petitioner cannot show that counsel was ineffective for failing to challenge his sentencing as an habitual offender.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b.  Failure to Present Alibi Witness

Petitioner also contends that counsel was ineffective for failing to present an alibi witness. This claim is based on a statement by Robin Anderson, which claims that Anderson saw Harvey's car running on the street, when petitioner jumped in and drove off.  At the time, Harvey was inside a house and was not outside.  The Michigan Court of Appeals rejected petitioner's claim, noting first that the statement of Anderson was not appropriately before it because it was not properly executed and notarized.  *See Lanski*, 2006 WL 2061401, at *2.[6]  The court further reasoned that counsel presented the same defense through petitioner's own testimony, and in light of the testimony of Harvey and Lester petitioner had failed to show that but for counsel's failure to call Anderson the outcome of the proceeding would have been different.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Counsel's strategic decisions regarding what witnesses to call at trial are "virtually unchallengeable."  *Awkal v. Mitchell*, 613 F.3d 629, 641 (6th Cir. 2010).  The Court's "concern is not to decide, using hindsight, what [it] think[s] would have been the *best* approach at trial.  Instead, [the Court] consider[s] only if the approach ultimately taken was within 'the wide range of reasonable professional assistance' given the circumstances."  *English v. Romanowski*, 602 F.3d 714,

---

[6]In addition to the signature of Anderson, the purported affidavit contains another signature, underneath bearing the handwritten legend "Commision Expires 6, 28 2008."  The signature of the purported notary, however, is accompanied by none of the requirements for a valid notarization under Michigan law.  *See* MICH. COMP. LAWS § 55.287(2).

728 (6th Cir. 2010) (quoting *Strickland*, 466 U.S. at 689). Further, as noted above, it is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. Thus, "a petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavits." *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also*, *Pittman v. Florida*, No. 8:05-cv-1700, 2008 WL 2414027, at *12 (M.D. Fla. June 11, 2008). Here, petitioner has presented no such evidence. The statement of Anderson fails to meet petitioner's burden for two reasons. First, new statements from witnesses years after the crime are inherently suspect, *see Schlup*, *Schlup v. Delo*, 513 U.S. 298, 314-16 (1996), and such statements are to be viewed with "a degree of skepticism." *Herrera v. Collins*, 506 U.S. 390, 423 (1993) (O'Connor, J., concurring). Second, although titled an affidavit, the statement is not properly notarized or signed under penalty of perjury. Such unsworn statements are entitled to little, if any, weight in assessing the adequacy of counsel's performance. *See Poindexter v. Bauman*, No. 2:09-CV-12021, 2011 WL 3204755, at *9 (E.D. Mich. July 28, 2011) (Zatkoff, J.); *cf. Teahan v. Almager*, 383 Fed. Appx. 615, 615 (9th Cir. 2010) (unsworn statements of purported alibi witnesses given to counsel were insufficient to show actual innocence); *Milton v. Secretary, Dep't of Corrections*, 347 Fed. Appx. 528, 531 (11th Cir. 2009) ("The alleged 'Oath Statement' of the victim's mother is not new, reliable evidence because it is not sworn to or signed by the purported author.").

Further, the court of appeals conclusion regarding prejudice was reasonable. Both Harvey and Lester testified that petitioner robbed them and took the car at gunpoint. Although Harvey's testimony was somewhat impeached, Lester's was not significantly called into question. Further,

34

Anderson's purported testimony would have mirrored the testimony petitioner gave at trial. While this testimony may have somewhat buttressed petitioner's own testimony, in light of the testimony of Harvey and Lester the Michigan Court of Appeals cannot be deemed unreasonable in having determined that there was not a reasonable probability that the result of the trial would have been different had Anderson testified. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

J.      *Recommendation Regarding Certificate of Appealability*

      1.      *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to

35

deserve encouragement to proceed further.'''" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999)

(quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893

n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new

Act does, however, require that certificates of appealability, unlike the former certificates of

probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C.

§ 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254

Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court

must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a

certificate of appealability "state the specific issue or issues that satisfy the showing required by §

2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of

Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not

issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id*., advisory

committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either

grant or deny the certificate of appealability at the time of its final adverse order, I include a

recommendation regarding the certificate of appealability issue here.

2.    *Analysis*

Here, if the Court accepts my recommendation regarding the merits of petitioner's claims,

the Court should also conclude that petitioner is not entitled to a certificate of appealability.  It is not

reasonably debatable that petitioner has procedurally defaulted Claims VI-VIII and X by failing to

raise them in a procedurally proper manner in the state courts.  It is likewise not debatable that

petitioner has failed to establish any cause for his failure to do so that would excuse his procedural default. Accordingly, the resolution of these claims is not reasonably debatable. It is not reasonably debatable that any error in the trial court's limitation of cross-examination of Harvey was harmless, in light of the fact that the jury heard that Harvey had previously lied about having his car stolen and the evidence against petitioner. Thus, he is not entitled to a certificate of appealability with respect to his confrontation claim. With respect to petitioner's double jeopardy claim, it is beyond dispute that the Michigan courts have interpreted the armed robbery and carjacking statutes as establishing two crimes which the Michigan Legislature intended both be applied, and that this Court is bound by this determination of state law in assessing petitioner's double jeopardy claim. Thus, the resolution of this claim is not reasonably debatable. It is further beyond dispute that a criminal defendant has no constitutional right to an adequate police investigation, and that the victims' testimony provided sufficient evidence to support petitioner's convictions. Finally, it is clear that petitioner's sentencing claim is not cognizable on habeas review, and thus the resolution of this claim is not reasonably debatable. Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability.

K.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation,

but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 11/8/12

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on November 8, 2012.

s/Eddrey Butts
Case Manager

38